IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Jeanette Oakman, individually and as the Personal Representative of the Estate of George Oakman,<br><br>                 Plaintiff,<br><br>     vs.<br><br>Lincare Inc., Linde A.G. (a/k/a Linde, LLC), Airsep Corporation and Chart Industries, Inc.,<br><br>                 Defendants. | Civil Action No. 1:13-cv-00428-JMC<br><br>**OPINION AND ORDER** |

      This matter is before the court upon Defendants Airsep Corporation, Chart Industries, Inc., and Lincare Inc.'s (collectively "Defendants") Motions to Dismiss[1] pursuant to FED. R. CIV. P. 12(b)(6) and for failure to comply with S.C. Code Ann. § 15-36-100 (2005). [Dkt. Nos. 6, 9]. Plaintiff opposes these motions on the ground that she has, in fact, complied with the requirements of § 15-36-100 [Dkt. Nos. 11, 12].

**PROCEDURAL BACKGROUND**

      Plaintiff Jeanette Oakman, individually and as the Personal Representative of the Estate of George J. Oakman ("Plaintiff"), filed this products liability action with the Court of Common

---

[1] Defendants' Motions to Dismiss are untimely because they were filed after Defendants' answers. FED. R. CIV. P. 12(b) ("A motion asserting any of these defenses must be made *before* pleading if a responsive pleading is allowed.") (emphasis added). However, the court proceeds to consider their motions as Motions for Judgment on the Pleadings in accordance with Rule 12(c). *Schy v. Susquehanna Corp.*, 419 F.2d 1112, 1115-16 (7th Cir. 1970) ("A motion made after the filing of an answer serves the same function as a motion for judgment on the pleadings and may be regarded as one.") (citing FED R. CIV. P. 12(c); *United States for Use of E.E. Black Limited v. Price-McNemar Construction Co.*, 320 F.2d 663, 664 n. 1 (9th Cir. 1963); *Kenemer v. Arkansas Fuel Oil Co.*, 151 F.2d 567, 568 (5th Cir. 1945)). A party may move for judgment on the pleadings after the pleadings have closed, but must do so early enough to avoid delaying trial. FED. R. CIV. P. 12(c). A motion for judgment on the pleadings is evaluated using the same standard as a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to FED. R. CIV. P. 12(b)(6). *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

1

Pleas for the Second Judicial Circuit of the State of South Carolina on October 2, 2013 [Dkt. No. 1, State Case No. 2012-CP-02-2449]. Plaintiff served Defendants through the Office of the Secretary of State on January 18, 2013. Defendants Airsep Corporation ("Airsep") and Chart Industries, Inc. ("Chart Industries") filed a Notice of Removal properly based upon diversity jurisdiction on February 15, 2013 [Dkt. No. 1]. Airsep and Chart Industries filed their Answers [Dkt. Nos. 4, 5] and their Motion to Dismiss [Dkt. No. 6] on February 18, 2013. Defendant Lincare Inc. ("Lincare") filed its Answer [Dkt. No. 8] and its Motion to Dismiss [Dkt. No. 9] on February 21, 2013.

## FACTUAL BACKGROUND

The decedent, George J. Oakman, obtained a prescription oxygen concentrator machine from Lincare. [Comp. ¶ 5.] Airsep, which is owned in whole by Chart Industries, manufactured the oxygen concentrator machine. [*Id.* ¶¶ 3, 5.] On October 3, 2009, the machine caught fire at George Oakman's residence, located at 144 St. John's Place, Warrenville, South Carolina, while he was asleep and breathing through a cannula supplied by Lincare. [*Id.* ¶ 6.] Mr. Oakman inhaled fire into his throat, lungs, and stomach, and sustained burns to his face and body as a result of the fire. [*Id.*] Afterward, Aiken County Emergency Medical Services transported Mr. Oakman to the Joseph M. Still Burn Center (Southeastern Regional Burn Center) at Doctor's Hospital, located in Augusta, Georgia. [*Id.* ¶ 7.] As a result of the fire, Mr. Oakman died on October 7, 2009. [*Id.* ¶¶ 7, 8.] His family and estate allege losses from incurred medical bills and lost future earning potential, and Plaintiff Jeanette Oakman, widow of the decedent, claims a loss of her husband's consortium. [*Id.* ¶ 8.]

**First Cause of Action**

In her first cause of action, Plaintiff alleges products liability, strict liability, negligence, and breach of warranty against Airsep and Chart Industries.[2] [*Id.* at 3.] Plaintiff claims the oxygen concentrator machine at issue was unreasonably dangerous due to its manufacturing and design defects, the serious risk of fire associated with its use, and its lack of warning of these dangers. [*Id.* ¶¶ 11-13.] Thus, according to Plaintiff, Airsep was negligent and is liable for placing this defective product into the stream of commerce based on South Carolina law, as well as on the principle of seller liability. [*Id.* ¶¶ 13, 19.] Furthermore, Plaintiff claims Airsep is strictly liable for falsely misrepresenting that the machine was safe for use in a manner indicated by Airsep to be suitable for consumer use. [*Id.* ¶¶ 14, 15.]

Additionally, Plaintiff asserts that Airsep breached its express and implied warranties that the machine was fit for its intended use, and thus violated the provisions of S.C. Code Ann. § 36-2-314 (1976) (Implied Warranty of Merchantability), § 36-2-315 (1976) (Implied Warranty of Fitness for a Particular Purpose), and § 36-2-313 (1976) (Express Warranty). [*Id.* ¶¶ 16, 17.] Plaintiff also claims that Airsep's conduct was done knowingly and that its acts constituted malice, [*Id.* ¶¶ 18, 20], and that as a result of Airsep's alleged wrongful conduct, the decedent suffered extensive physical injuries and death, and Plaintiff suffered pecuniary loss of service, mental anguish, loss of consortium with her husband, and incurred expenses from her emotional trauma. [*Id.* ¶ 24.]

**Second Cause of Action**

In her second cause of action, Plaintiff alleges products liability, strict liability, negligence, and breach of warranty against Lincare and Defendant Linde, A.G. ("Linde").[3] [*Id.* at 7.] Plaintiff claims that the oxygen concentrator machine was defective at the time it was

---

[2] Chart Industries, Inc., is the parent company of Airsep Corporation, and is named as Defendant in that capacity.

[3] Linde, A.G., is the parent company of Lincare Inc., and is named as Defendant in that capacity.

3

marketed, promoted, advertised, distributed, and sold by Lincare [*Id.* ¶ 27], and that Lincare failed to give adequate and proper warnings and instructions regarding the dangers of the machine [*Id.* ¶ 28]. According to Plaintiff, these acts and omissions rendered the machine unreasonably dangerous, thus making Lincare liable for placing this defective product into the stream of commerce based on South Carolina law and on the principle of seller liability. [*Id.* ¶ 29.] Moreover, Plaintiff claims Lincare is strictly liable for falsely misrepresenting that the machine was safe for use in a manner indicated by Airsep to be suitable for consumer use. [*Id.* ¶ 30.]

Plaintiff claims that Lincare breached its express and implied warranties that the machine was fit for its intended use, and thus violated S.C. Code Ann. § 36-2-314 (Implied Warranty of Fitness for a Particular Purpose) and § 36-2-313 (Express Warranty). [*Id.* ¶¶ 31, 32.] Furthermore, Plaintiff alleges that one or more of the following acts and/or omissions on behalf of Lincare constitute negligence: (a) failing to warn the decedent about the known dangers associated with the use of the machine; (b) putting a product in decedent's home that was known to be defective and cause life threatening fires; (c) providing the decedent with the machine after it had already been used for an excessive number of hours; (d) failing to provide adequate maintenance to the product in question; and (e) failing to respond to complaints of unusual noises coming from the machine. [*Id.* ¶ 34.]

As a result of Lincare's alleged wrongful conduct, the decedent allegedly suffered extensive physical injuries and death, and Plaintiff suffered pecuniary losses of services, expenses incurred from her emotional trauma, mental anguish, and loss of consortium with her husband. [*Id.* ¶ 36.] Plaintiff believes she is entitled to punitive damages, in addition to actual

4

damages and the costs of this action, because Lincare's aforesaid actions constituted malice and negligence *per se*, and were wanton, willful, and careless. [*Id.* ¶¶ 33, 39, 40, 41.]

**Third Cause of Action**

For a third cause of action, Plaintiff alleged civil conspiracy against Airsep, Chart Industries, Lincare, and Linde. [*Id.* at 11.] However, Plaintiff withdrew this claim [Dkt. No. 11 at 2] and thus the court need not consider it.

## STANDARD OF REVIEW

When ruling on a motion to dismiss filed pursuant to FED. R. CIV. P. 12(b)(6), the court must presume all facts alleged in the complaint to be true and draw all reasonable inferences in the plaintiff's favor. *Edwards*, 178 F.3d at 243. However, the court is not required to accept the legal conclusions the plaintiff sets forth in her complaint as true. *Id.* at 244. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 666, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint requires more than a statement simply alleging that the defendants illegally harmed the plaintiff. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The court must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory that might plausibly be suggested by the facts alleged." *Edwards*, 178 F.3d at 245.

## DISCUSSION

In their Motions to Dismiss, Defendants assert (1) that Plaintiff failed to plead special damages resulting from her first cause of action for civil conspiracy [Dkt. No. 6 at 3-4; Dkt. No.

5

9 at 3-4], and (2) that Plaintiff was required under S.C. Code Ann. 15-36-100(B) to submit an expert affidavit as to defective design by a professional engineer contemporaneously with her complaint alleging defective design of the oxygen concentrator machine in the first cause of action against Airsep and Chart Industries.  [Dkt. No. 6 at 3-4; Dkt. No. 9 at 4-5.]  Plaintiff agreed to withdraw the cause of action for civil conspiracy.  [Dkt. No. 11 at 2.]  Thus, this claim is dismissed with prejudice.  Therefore, the court only need consider Defendants' argument as to the expert affidavit for Count 1, which Plaintiff claims is unnecessary.  [*Id.*]

The South Carolina General Assembly enacted the Frivolous Civil Proceedings Sanctions Act ("FCPSA") in an effort to prevent the filing of frivolous lawsuits and initiate the investigation and settlement of cases prior to the filing of complaints.  *See In re Steinmetz*, Bankruptcy Nos. 07-00628, 07-00579, Adversary No. 10-80177, 2012 WL 4543894 (Bankr. D.S.C. Mar. 18, 2011).  S.C. Code Ann. § 15-36-100, a subsection of the FCPSA, requires the contemporaneous filing of an expert affidavit with the complaint in certain lawsuits alleging professional negligence.  S.C. Code Ann. § 15-36-100.  Defendants argue that Plaintiff was required under § 15-36-100(B) to submit an expert affidavit regarding the alleged defective design of the oxygen concentrator machine at issue because "[t]he design of a device such as an oxygen concentrator is performed by professional engineers who are afforded protection by [§ 15-36-100(B)]."  [Dkt. No. 6 at 4.]  Plaintiff contends, however, that no expert affidavit is necessary for her defective design claim because "this lawsuit is not being brought against any individual professional engineer," but "against corporate entities organized in the United States and in foreign European counties."  [Dkt. No. 11 at 2.]

United States District Courts for the District of South Carolina and South Carolina courts have enforced the contemporaneous filing requirement of § 15-36-100(B) in cases in which the

6

professional alleged to have been negligent was a named defendant,[4] and in cases alleging professional negligence against the employees of a licensed health care facility in which the health care facility and/or the professionals themselves were named defendants.[5] However, the question of whether the contemporaneous filing requirement applies in actions against corporations (i.e., non-health care facilities) for the defective design of products by professional engineers employed by those corporations is one of first impression in the State of South Carolina. Thus, the court must interpret the language of § 15-36-100(B) and apply the statute to the facts of this case.

When a federal court interprets a state law, it should apply the statutory construction rules applied by the state's highest court. *In re DNA Ex Post Facto Issues*, 561 F.3d 294, 300 (4th Cir. 2009). Under South Carolina law, all rules of statutory construction "are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used,

---

[4] *See, e.g.*, *Peterson v. Stephens*, Civil Action No. 0:12-1366-GRA-PJG, 2013 WL 1386673 (D.S.C. Mar. 7, 2013); *Taylor v. Urch*, Civil Action No. 2:12-cv-1293-JMC-BHH, 2013 WL 756347 (D.S.C. Feb. 1, 2013); *Wilder v. Byars*, Civil Action No. 3:12-1743-CMC-JRM, 2013 WL 1181488 (D.S.C. Jan. 30, 2013); *Fordham v. Moore*, Civil Action No. 2:12-974-MGL, 2013 WL 314476 (D.S.C. Jan. 28, 2013); *Jamison v. Bamberg*, Civil Action No. 0:11-2245-MGL-PJG, 2012 WL 7656426 (D.S.C. Nov. 28, 2012); *Reeves v. McCree*, Civil Action No. 0:11-3112-GRA-PJG, 2012 WL 6674487 (D.S.C. Oct. 29, 2012); *Graham v. Ozmint*, Civil Action No. 0:11-2406-MBS-PJG, 2012 WL 6907983 (D.S.C. Oct. 5, 2012); *Weil v. Killough*, Civil Action No. 2:12-cv-00856-DCN, 2012 WL 3260395 (D.S.C. Aug. 8, 2012); *Straws v. Roach*, Civil Action No. 5:11-132-TMC-KDW, 2012 WL 3157001 (D.S.C. July 13, 2012); *Hornsby v. Hipp*, Civil Action No. 0:11-1749-RBH-PJG, 2012 WL 3230500 (D.S.C. July 10, 2012); *Hernandez v. Barfield*, Civil Action No. 5:11-00641-TLW-KDW, 2012 WL 4344613 (D.S.C. June 29, 2012); *Phomphackdi v. Eagleton*, Civil Action No. 0:10-2633-DCN-PJG, 2011 WL 7063652 (D.S.C. Dec. 28, 2011); *Gallipeau v. Correct Care Solutions*, Civil Action No. 3:10-2017-JFA-JRM, 2011 WL4502043 (D.S.C. Sept. 29, 2011); *In re Steinmetz*, 2012 WL 4543894; *Hays v. Pearlman*, Civil Action No. 2:10-cv-1135-DCN, 2010 WL 4510956 (D.S.C. Nov. 2, 2010); *Allen v. Gaskins*, Civil Action No. 0:08-1338-SB-PJG, 2010 WL 1010014 (D.S.C. Feb 18, 2010); *Rotureau v. Chaplin*, Civil Action No. 2:09-cv-1388-DCN, 2009 WL 5195968 (D.S.C. Dec. 21, 2009); *H & H of Johnston, LLC v. Old Republic Nat. Title Ins. Co.*, Appellate Case No. 2012-211167, 2013 WL 2422867 (S.C. Ct. App. June 5, 2013).

[5] *See, e.g.*, *Hart v. Piedmont Medical*, Civil Action No. 0:13-261-JFA-BM, 2013 WL 1184253 (D.S.C. Feb. 21, 2013); *Perry v. South Carolina Dept. of Corrections*, Civil Action No. 4:12-1205-RMG-TER, 2013 WL 681894 (Jan. 22, 2013); *Argot v. Harden*, Civil Action No. 4:11-2755-MBS-TER, 2013 WL 625528 (D.S.C. Jan. 10, 2013); *Jeter v. Palmetto Health*, Civil Action No. 3:10-2832-CMC-SVH, 2012 WL 6522093 (D.S.C. Nov. 14, 2012); *Sims v. Snyder*, Civil Action No. 0:10-2216-CMC-PJG, 2011 WL 3794156 (D.S.C. Aug. 12, 2011); *Jones v. Correctional Care Solutions*, Civil Action No. 0:09-269-HMH-PJH, 2010 WL 2639788 (D.S.C. June 7, 2010); *Eaglin v. Metts*, Civil Action No. 0:08-2547-TLW-PJG, 2010 WL 1051177 (D.S.C. Feb. 16, 2010); *Bardes v. Magera*, Civil Action No. 2:08-CV-487-PMD-RSC, 2009 WL 3163547 (D.S.C. Sept. 30, 2009).

7

and that language must be construed in light of the intended purpose of the statute." *State v. Sweat*, 688 S.E.2d 569, 575 (S.C. 2010) (quoting *Broadhurst v. City of Myrtle Beach Election Comm'n*, 537 S.E.2d 543, 546 (S.C. 2000)). The words of a statute should be given "their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand that statute's operation." *Id.*

"Where [a] statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 533 S.E.2d 578, 581 (S.C. 2000). "It is only when applying the words literally leads to a result so patently absurd that the General Assembly could not have intended it that [the court should] look beyond the statute's plain language." *Grier v. AMISUB of South Carolina, Inc.*, 725 S.E.2d 693, 695-96 (S.C. 2012).

Courts should consider the language of the particular clause being construed, as well as the words of that clause and their meaning in conjunction with the purpose of the whole statute and the policy of the law. *Whitner v. State*, 492 S.E.2d 777, 779 (S.C. 1997). Terms should be construed in context, and their meaning should be determined by looking to other terms used in the statute. *State v. Landis*, 606 S.E.2d 503, 505-06 (S.C. Ct. App. 2004). "It is the duty of the court 'to give effect, if possible, to every clause and word of a statute.'" *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)). Thus, courts should be "'reluctant to treat statutory terms as surplusage' in any setting." *Id.* (quoting *Babbitt v. Sweet Home Chapter, Communities for Great Ore*, 515 U.S. 687, 698 (1995)). Courts should be "especially unwilling to do so" when the word or clause at issue occupies a "pivotal" place in the statutory scheme. *Id.*

Specifically, statutes in "derogation of the common law" should be "strictly construed." *Grier*, 725 S.E.2d at 696. Accordingly, a statute that restricts the common law will "not be extended beyond the clear intent of the legislature." *Id.* Statutes that "limit a claimant's right to bring suit" are subject to this rule. *Id.* (citing 82 C.J.S. *Statutes* § 535 (updated June 2013)).

In pertinent part, S.C. Code Ann. § 15-36-100(B) states the following:

> …[I]n an action for damages alleging professional negligence *against a professional licensed by or registered with the State of South Carolina and listed in subsection (G)* or *against any licensed health care facility alleged to be liable based upon the action or inaction of a health care professional* licensed by the State of South Carolina and listed in subsection (G), the plaintiff must file as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the affidavit (emphasis added).

Section 15-36-100(B) restricts a plaintiff's common law right to bring a malpractice claim by imposing this simultaneous filing requirement. *Grier*, 725 S.E.2d at 697. For this reason, its language must be strictly construed. *Id.* The article "a" and the singular noun "professional" in the second clause of the statute clearly and unambiguously demonstrate that the General Assembly intended to apply this filing requirement only to actions brought against individual persons—not to actions brought against the corporations or other business entities by which these individuals are employed—unless those actions are brought against licensed health care facilities. *See* S.C. Code Ann. § 15-36-100(B).

The exception for health care facilities included in the second clause of the statute further supports the court's interpretation of the General Assembly's intent. To hold otherwise, the court would not be giving effect to all words and clauses of the statute. *See Duncan v. Walker*, 533 U.S. at 174. Had the General Assembly intended for § 15-36-100(B) to apply to actions brought against any corporation or business entity (and not solely against individual professional persons), the phrase "or against any licensed health care facility alleged to be liable based upon

9

the action or inaction of a health care professional … listed in subsection (G)" would be insignificant and wholly superfluous.  If the contemporaneous filing requirement applied to actions brought against any and all corporations or business entities, it could be assumed in the absence of an explicit exception that this requirement would apply to actions against health care professionals as well as the health care facilities by which these individuals are employed because various categories of healthcare professionals are already listed in subsection (G).  *See* S.C. Code Ann. § 15-36-100(G).

Furthermore, the singular language used in the professional engineering licensing and review process guidelines reveals that the characterization of "professional engineer" refers to individual persons.  *See* S.C. Code Ann. § 40-22-222 (2007).  Only those "*individuals* who have graduated in a baccalaureate TAC/ABET accredited curriculum and who have successfully passed the NCEES Principles of Practice and Fundamentals of Engineering Examinations," in addition to fulfilling many other criteria, may become licensed professional engineers.  *Id.* (emphasis added).

The overwhelming majority of cases from South Carolina courts that concern professional engineers refer to individual persons (*see, e.g.*, *Murphy v. South Carolina Dept. of Health and Environmental Control*, 723 S.E.2d 191 (S.C. 2012); *State v. Morris*, 656 S.E.2d 359 (S.C. 2008); *J.T. Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97 (S.C. 2006)), and the remainder of those cases refer to professional engineering consulting firms (*see, e.g.*, *Republic Contracting Corp. v. South Carolina Dept. of Highways and Public Transp.*, 503 S.E.2d 761 (S.C. 1998))—neither of which applies to Defendants.

Additionally, the other categories of professionals listed in subsection (G), including architects, attorneys at law, land surveyors, occupational therapists, pharmacists, marriage and

family therapists, radiological technicians, and veterinarians (among others), each refer to individual persons. S.C. Code Ann. § 15-36-100(G). On the contrary, this subsection does not make reference to any corporations or other business entities. *Id.*

Because the language of § 15-36-100(B) is plain and unambiguous, and a literal application of the words of the statute does not lead "to a result so patently absurd that the General Assembly could not have intended it," the court has no right to impose a different meaning or to look beyond the statute's plain language for purposes of interpretation. *See Hodges*, 533 S.E.2d at 581; *see also Grier*, 725 S.E.2d at 695-96. However, it may be noted that the court's construction of § 15-36-100(B) is not at odds with the overarching purpose of the FCPSA. Some of the harshest consequences of frivolous litigation, including expensive attorney's fees and other economic and time losses, often affect individual defendant persons more severely than defendant corporations or other business entities because of the potential disparities in financial and human resources between the two.

In its Motion to Dismiss, Lincare cites the District of South Carolina's decision in *Barnes v. Seigler* as support for its argument that Plaintiff must abide by the contemporaneous filing requirement of § 15-36-100(B). [Dkt. No. 9 at 5.] In *Barnes*, the court dismissed a plaintiff's professional negligence claim for failure to file an expert affidavit contemporaneously with his complaint. *See Barnes v. Seigler*, Civil Action No. 5:11-CV-1156-MBS-KDW, 2012 WL 265609 (D.S.C. Jan 30, 2012). However, this case concerned legal malpractice and fraudulent concealment claims against individual persons who were named defendants. *See id.* This case did not concern professional negligence claims against corporations for the actions or inactions of professional engineers employed by said corporations and thus is not directly applicable to the issue at hand. *See id.*

It should also be noted that Defendants do not fall into the health care facility categorical exception that requires contemporaneous filing of an expert affidavit with the complaint because Airsep and Chart Industries do not qualify as health care facilities. Airsep is a manufacturer of medical and industrial air separation equipment (AIRSEP, http://www.airsep.com (last visited July 10, 2013)), and Chart Industries is a manufacturer and supplier of standard and custom engineered products and systems for cryogenic and heat transfer applications in the natural and industrial gas industry (CHART, http://www.chartindustries.com/About-Us.aspx (last visited July 10, 2013)). Lincare could conceivably be considered a health care facility; however, Lincare's characterization as a health care facility is legally irrelevant because Plaintiff alleged a claim for professional negligence against Airsep and Chart Industries, not against Lincare or its parent company Linde.

## CONCLUSION

For the foregoing reasons, the court declares that no affidavit of an expert is necessary under S.C. Code Ann. § 15-36-100 regarding defective design by a professional engineer for Plaintiff's first cause of action. Furthermore, it does not appear that Plaintiff would not be entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *See Edwards*, 178 F.3d at 245. Therefore, it is hereby **ORDERED** that Defendants' Motions to Dismiss [Dkt. Nos. 6, 9] are **DENIED.**

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

July 10, 2013
Greenville, South Carolina